UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1:16-cr-00187-DAD-BAM |
| Plaintiff, | |
| v. | ORDER REGARDING COMPETENCY OF DEENDANT GONZALEZ |
| ROBERT GONZALEZ, | |
| Defendant. | |

**BACKGROUND**

As the parties are aware this case has a lengthy and complicated history. For one, defendant Gonzalez is now being represented by his third attorney in this action to date, attorney Virna Santos.[1] In May of 2019, when defendant sought yet another *Marsden* hearing with respect to attorney Santos, the assigned Magistrate Judge conducted a sealed hearing and ordered a psychiatric or psychological evaluation of the defendant pursuant to 18 U.S.C. § 4241(b) in order to assist in the determination of defendant's mental competency to stand trial and to assist properly in his defense. (Doc. No. 108.) Unfortunately, delay in the court's ability to make this

---

[1] Defendant Gonzalez filed *Marsden* motions as to his first two appointed lawyers which were eventually granted on May 8, 2017 and October 22, 2018. (Doc. No. 44, 76. ) Defendant Gonzalez has now filed yet another *pro se ex parte Marsden* motion that is pending before the court awaiting resolution of the issue of defendant's competency to assist in his defense. (*See* Doc. No. 169.)

1

determination has followed.

On June 12, 2019, the Warden at the Bureau of Prisons Metropolitan Detention Center where defendant Gonzalez had been sent for evaluation requested a fifteen-day extension of time under § 4241 to complete the testing and examination, representing that, if granted, BOP's report would be received by the court by August 12, 2019.  (Doc. No. 111.)  On July 1, 2019, the request for the extension of time was granted.  (Doc. No. 110.)  However, as of October 1, 2019, no evaluation report had yet been received from BOP and the U.S. Magistrate Judge Barbara McAuliffe set the matter back before the undersigned on October 7, 2019.  (Doc. No. 121.)  By the October 7, 2019 hearing a report had still not been received by the court, and the undersigned continued the matter to October 28, 2019 and indicated that the court would be contacting BOP officials directly, which it did.  (Doc. Nos. 122, 123.)  Finally, on October 16, 2019 BOP's Forensic Evaluation Report was received by the court.[2]  (Doc. No. 125 – sealed).

However, at the next hearing held on October 28, 2020, counsel for defendant Gonzalez expressed dissatisfaction with the BOP's evaluation on a number of grounds, but with an emphasis on alleged deficiencies resulting from the fact that the BOP evaluation was performed solely by psychologists without participation by a psychiatrist and without any medical testing with respect to conditions from which the defendant may be suffering.  The matter was therefore continued to October 30, 2019, at which time the undersigned granted defense counsel's request for an independent psychiatric evaluation to be performed locally, along with further medical diagnostic testing.  (Doc. No. 127.)  The matter was set for trial confirmation hearing on November 18, 2019, but the independent psychiatric evaluation was, understandably, not yet

---

[2] The forensic evaluation and report was authored by BOP Forensic Psychologist Tiffany K. Smith, Psy.D. and was reviewed by Lisa Matthews, Psy.D., Chief Forensic Psychologist at the BOP's Metropolitan Detention Center in Los Angeles, CA.  (Doc. No. 125 – sealed).  That forensic evaluation also noted that in addition to contacting the prosecuting Assistant U.S. Attorneys and defendant Gonzalez's current appointed counsel, defense counsel had provided BOP a preliminary report prepared by Claudia Cerda, Psy.D.  (*Id*. at 8.)  It was also reflected that Dr. Cerda had reported experiencing difficulties in completing her evaluation of defendant as a result of his behavior but she did ultimately conclude that, following a psychiatric evaluation and treatment, the defendant would be able to complete the assessment process and improve his ability to work with his attorney.  (*Id*.)

completed by that time and the case was continued December 16, 2019 for a status conference regarding the independent psychiatric evaluation. (Doc. No. 131.) By stipulation of the parties that status conference was continued to January 15, 2020 so that the evaluation could be completed. (Doc. No. 134.) However, on January 15, 2020, the defense instead filed a request that the court order the defendant produced for certain diagnostic testing that was represented to be crucial to the psychiatrist's evaluation but which the defense had been unable to obtain. (Doc. Nos. 141 – sealed, 142, 143.) The court granted that request. The matter was continued to February 3, 2020 for a status report but by that date the independent psychiatric evaluation and report commissioned by the defense had still not been completed. (Doc. No. 150.) The court then set the matter for evidentiary hearing regarding competency on March 2, 2020. (*Id*.)

On February 28, 2020, the defense finally filed the independent psychiatric evaluation prepared by A.A. Howsepian, M.D., Ph.D. under seal. (Doc. No. 155 – sealed.) On March 2, 2020, an evidentiary hearing was held with Dr. Howsepian appearing as the sole witness. (Doc. No. 159.)³ However, while somewhat unclear, the medical diagnostic testing long sought by the defense and ordered by the court, had either not been completed or had been completed but the results had still not been provided to counsel and the independent psychiatrist. (Doc. No. 162 – sealed). Accordingly, the court ordered those diagnostic test to be completed and the results shared within 10 days and required that supplemental submissions by the parties be filed by March 16, 2020. (*Id*.; *see also* Doc. No. 159.) A briefing schedule was also set for any supplemental briefing from the parties. (*Id*.) Upon stipulation of the parties, that schedule was

/////

/////

/////

---

³ The government was offered the opportunity to present evidence at the evidentiary hearing but chose instead to rely solely on the reports prepared by the BOP psychologist and its cross-examination of Dr. Howsepian. (Doc. No. 162 at 6) (sealed). Defendant Gonzalez was advised of his right to testify at the hearing but declined to do so. (*Id.* at 41–42.) At the conclusion of the evidentiary hearing, the court had the understanding that the government was preserving the possibility of presenting live testimony from Dr. Smith (*see id.* at 47–48), but ultimately did not present any such testimony

3

extended twice, the last time to March 26, 2020.  (Doc. Nos. 166, 171.)[4]  On March 27, 2020, the government filed its supplemental submissions, consisting almost exclusively of the declaration of BOP's Dr. Tiffany Smith, Psy.D. responding to Dr. Howsepian's evidentiary hearing testimony.  (Doc. No. 173-174 – sealed.)  On March 30, 2020, counsel for defendant Gonzalez filed supplemental submissions including declarations from psychiatrist Dr. Howsepian based upon his review of the medical work-up and diagnostic testing of defendant which had been completed by that time as well as his rebuttal to Dr. Smith's declaration.  (Doc. No. 179.)

## ANALYSIS

In making the competency determination, this court is guided by well-established standards.  The Ninth Circuit has explained the first of those standards as follows:

> We begin with first principles.  The Constitution provides criminal defendants with the right to be competent during trial.  *Indiana v. Edwards*, 554 U.S. 164, 170, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008) (citing *Dusky v. United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (*per curiam*), and *Drope v. Missouri*, 420 U.S. 162, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975)).  At all times before his conviction, a defendant must have "a rational as well as factual understanding of the proceedings against him" and "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding."  *Id*. (internal quotation marks and emphasis omitted).  If a defendant fails to satisfy either of those requirements, then the proceedings against him may go no further.  *Id*.

*United States* v. *Duncan* 643 F.3d 1242, 1248 (9th Cir. 2011); *see also United States* v. *Mikhel*, 889 F.3d 1003, 1037 (9th Cir. 2018) (formulating the question as whether "due to a mental disease or defect, the defendant is either unable to understand the nature and consequences of the

---

[4] In the meantime, on March 17, 2020, the Chief Judge of this court issued General Order 611 limiting access to and proceedings in the courthouses of this district in light of the COVID 19 pandemic. The following day, March 18, 2020, General Order 612 was issued closing the courthouses of the district to the public. On April 16, 2020, the Judicial Council of the Ninth Circuit declared a judicial emergency in this district based upon the pandemic and other circumstances and authorized the invocation of the provisions of 18 U.S.C. § 3174(c) regarding the time period for bringing criminal defendants to trial. On April 17, 2020, General Order 617 was issued by the Chief Judge of this court extending the public closure of the courthouses. Finally, on May 13, 2020, General Order 618 was issued closing the courthouses of the district to the public until further order of the court. As of the date of this order, the courthouses remain closed to the public and all proceedings that are able to be conducted are being held by video appearances.

proceedings against him *or* to assist properly in his defense.") (quoting *United States v. Garza*, 751 F.3d 1130, 1134 (9th Cir. 2014) (emphasis in original)); *United States v. Loyola-Dominguez*, 125 F.3d 1315, 1318 (9th Cir. 1997) ("Competency requires that the defendant have the 'capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense.'") (quoting *Drope*, 420 U.S. at 171); 18 U.S.C. § 4241(a) (codifying this standard). "The Government has the burden of demonstrating by a preponderance of the evidence that the defendant is competent to stand trial." *United States v. Frank*, 956 F.2d 872, 875 (9th Cir. 1992); *see also United States v. Martinez-Hernandez*, 312 Fed. App'x. 984, 985 (9th Cir. 2009).[5] In determining competency, the district court may consider psychiatric and psychological evaluation as well as the defendant's behavior and demeanor in the courtroom. *United States* v. *Fernandez,* 388 F.3d 1199, 1251 (9th Cir. 2010); *United States v. Concepcion-Alvarez*, 385 Fed. App'x. 763, 765 (9th Cir. 2010).[6] "Finally, trial courts must assess a defendant's competence with specific reference to the gravity of the decisions the defendant faces." *Chavez v. United States*, 656 F.2d. 512, 518 (9th Cir. 1981).

In this case, defendant Gonzalez has been charged with conspiracy to distribute and possess with the intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine and five grams or more of actual methamphetamine in violation of 21 U.S.C. §§ 846, 841 (Count One); three counts of distribution of 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine and five grams or more of actual methamphetamine in violation of 21 U.S.C. § 841 (Counts Two, Four, and Six); and one count of distribution of methamphetamine in violation of 21 U.S.C. § 841 (Count Eight). On Counts One, Two, Four, and Six, defendant Gonzalez faces a maximum punishment on each of a mandatory minimum 5 year term of imprisonment up to a maximum of 40 years imprisonment, a fine of up to $5,000,000, and a 4 year to life term of supervised release. Count Eight is punishable by a maximum 20 year term of imprisonment, a fine of up to $1,000,000, and

---

[5] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36–3(b).

[6] See fn. 5, above.

a 3 year to life term of supervised release. Each count carries with it a $100 special assessment. In short, the pending charges are serious, posing the possible imposition of lengthy prison sentences if defendant Gonzalez is convicted. In addition, as noted above, defendant Gonzalez is currently on his third appointed counsel and has requested yet another *Marsden* hearing. He has repeatedly expressed his dissatisfaction with each attorney to have been appointed to represent him, even though the court is familiar with each of those experienced attorneys and holds them in high regard. Finally, the court observes that defendant Gonzalez has been at times disruptive during his court appearances. This has usually taken the form of speaking out in court unprompted and continuing to speak when instructed by the court to cease doing so. On at least one occasion before the undersigned, defendant Gonzalez's behavior became sufficiently disruptive that the court was required to have him removed from the courtroom by Deputy U.S. Marshals.

As noted above, defendant Gonzalez's current and third appointed counsel requested a competency determination. (Doc. No. 107.) In seeking to meet its burden of establishing defendant Gonzalez's competency by a preponderance of the evidence, the government has chosen to rely solely on the report and subsequent declaration of BOP psychologist Tiffany K. Smith, Psy.D. (Doc. No. 125 – sealed.) That evaluation was filed with the court under seal and will only be summarized here with respect to its conclusions. Based upon the BOP's assessment procedures[7], Dr. Smith concluded that:

> Based on the information available, there is no objective evidence to indicate Mr. Gonzalez suffers from signs or symptoms of a major mental disorder, such as an affective disorder (e.g., Bipolar Disorder), psychotic disorder (e.g., Schizophrenia), or an organic disorder that would impair his present ability to understand the nature and consequences of the court proceedings against him, or his ability to properly assist counsel in his defense or to represent himself.
>
> * * *

---

[7] This assessment included interviews of defendant Gonzalez, observation of his behavior, review of his monitored phone calls, and administration of testing including the Wechsler Abbreviated Scale of Intelligence (WASI-II), the Minnesota Multiphasic Personality Inventory (MMPI-2-RF), the Structured Inventory of Malingered Symptomatology (SIMS); the Miller Forensic Assessment of Symptoms Test (M-FAST), the b Test, the Inventory of Legal Knowledge (ILK), and the Revised Competency Assessment Instrument (RCAI).

> From the available information, there is evidence to suggest that Mr. Gonzalez is able to ascertain reality, realistically appraise his behavior, and converse in a logical and coherent manner, all of which would be necessary, to some extent, to represent himself or to properly assist counsel in a defense. Given his presentation during the evaluation, Mr. Gonzalez will most likely continue to engage in the behavior to avoid criminal prosecution. The behavior is volitional and goal directed and not derived from an underlying mental disorder, but may be disruptive to the court proceedings.

(Doc. No. 125 at 24–25) (sealed). Throughout the report, Dr. Smith concluded that defendant Gonzalez was malingering, intentionally failing to "put forth adequate effort," "exaggerating or feigning symptoms of mental illness," and "feigning intellectual deficiency." (*Id*. at 11–15, 20.) Ultimately, Dr. Smith provided a diagnosis of Stimulant Use Disorder and Malingering with an accompanying provisional diagnosis of Antisocial Personality Disorder.

Psychiatrist A. A. Howsepian, M.D., Ph.D. disagreed with the conclusions reached by Dr. Smith in almost every material respect and he outlined the basis for that disagreement at length in his report filed with this court under seal. (Doc. No. 155) (sealed). Preliminarily, he concluded that defendant Gonzalez currently suffers from:

> (1) Unspecified Disruptive, Impulse-Control, and Conduct Disorder, (2) Unspecified Depressive Disorder, (3) Unspecified Psychotic Disorder, (4) Rule Out Personality Change Due to Another Medical Condition, Combined Type (With Labile, Disinhibited, Aggressive, and Paranoid Features, (5) Rule Out Intermittent Explosive Disorder.

(Doc. No. 155 at 16.) In reaching this diagnosis, Dr. Howsepian persuasively detailed all of the reasons underlying his professional opinion that defendant Gonzalez was not malingering or feigning mental illness. (*Id*.) Based upon his diagnosis, Dr. Howsepian opined that defendant Gonzales is currently not competent to stand trial because, due to his mental disorder, he is currently incapable of assisting in his defense. (*Id*.)

At the evidentiary hearing Dr. Howsepian fully described his difficulty in interviewing defendant Gonzalez due to his volatility, irritability, rapid speech, and anger. (Doc. No. 162 at 11) (sealed). He also described defendant's strong paranoid belief that everyone, including his current lawyer and Dr. Howsepian himself, were working against him. (*Id*. at 11–13, 25.) Dr. Howsepian pointed out the internal inconsistencies in Dr. Smith's forensic evaluation and explained why the conclusions reached in that evaluation were not supported by the evidence,

especially with respect to the finding of malingering. Based upon his evaluation, Dr. Howsepian stated that he had no doubt that defendant Gonzalez has an adequate understanding of the nature of the charges against him as well as the potential consequences of the criminal proceedings against him, but that nonetheless, due to his mental condition the defendant is not able to properly assist in his own defense at this time. (*Id.* at 26–27.) Based upon his preliminary positive response to certain medication, Dr. Howsepian also concluded that psychiatric treatment in a hospital setting with the administration of medication would likely result in significant improvement in the defendant's condition within a 4-month period of time. (*Id*. at 29–30, 39–41.) In response to questions from the court, Dr. Howsepian indicated that if all of the medical testing, which had then still not been received, failed to reflect abnormalities, his diagnosis of defendant Gonzalez would be Intermittent Explosive Disorder, a DSM-5 diagnosis, and a condition which can be effectively treated with medications. (*Id*. at 35–37.) In his supplemental declaration Dr. Howsepian opined, in light of the unremarkable EEG results received after the hearing, that defendant Gonzalez suffers from either Intermittent Explosive Disorder or a Personality Change which profoundly impairs his ability to cooperate and assist in his defense. (Doc. No. 179 at 5) (sealed).[8]

On this record, the appropriate determination is not clear cut. Both Dr. Howsepian and Dr. Smith have provided a reasonable basis for their conclusions, diagnosis, and opinions. Dr. Howsepian, the only witness to testify at the hearing before the court, was quite credible and responded persuasively to the court's own inquiries as to how he could distinguish between his Intermittent Explosive Disorder diagnosis and Dr. Smith's suggestion of possible Antisocial Personality Disorder. (Doc. No. 162 at 35–41.) The court is aware that in performing its fact-finding and making any credibility determination in this context, it is free to give greater weight to the findings of government experts than to the opposing opinions of defense medical witnesses. *See Frank*, 956 F.2d at 875. The court does not feel compelled to do so here. In particular, the

---

[8] Other than this, the parties supplemental submissions are, for the most part, devoted to Drs. Howsepian and Smith further detailing why they disagree with the other's opinion regarding the defendant and his competency.

court concludes that Dr. Howsepian's finding that defendant Gonzalez was neither malingering nor feigning mental illness to be a more credible conclusion than Dr. Smith's contrary finding and is also one that is supported by other evidence. At the same time, the court is cognizant that although a defendant's lack of cooperation with his attorney may suggest he is incompetent because he cannot consult with his attorney and assist in his defense, it is also true that a defendant's refusal to cooperate with his counsel does not render him incompetent. *United States v. Porter*, 907 F.3d 374, 380–81 (5th Cir. 2018). "The relevant legal question is not whether a defendant will 'assist properly in his defense' but whether 'he [is] able to do' so." *United States v. Battle*, 613 F.3d 258, 263 (D.C. Cir. 2010) (quoting *United States v. Vachon*, 869 F.2d 653, 655 (1st Cir. 1989)).

## FINDINGS AND CONCLUSION

After considering all of the evidence placed before it, the court finds Dr. Howsepian's evaluation and opinion to be somewhat more credible than Dr. Smith's. This conclusion is supported by the court's own observations of the defendant in court, including the instance when the court was required to have the defendant removed from the courtroom by Deputy U.S. Marshals due to his disruptive and completely uncooperative behavior (*see Fernandez*, 388 F.3d at 1251), as well as the serious punishment the defendant faces if convicted of the offenses with which he is charged (*see Chavez,* 656 F.2d. at 518). The court concludes that the government has simply failed to meet its burden of demonstrating by a preponderance of the evidence that defendant Gonzalez is competent to stand trial. *Frank*, 956 F.2d at 875. Specifically, the court finds that by a preponderance of the evidence defendant Robert Gonzalez is presently suffering from a mental defect rendering him mentally incompetent to the extent that he is unable to assist properly in his defense.

Accordingly, defendant Gonzalez is hereby committed to the custody of the Attorney General for a reasonable period of time, not to exceed four months, for the purpose of restoration of competency, pursuant to 18 U.S.C. § 4241(d). In addition to the previous excludable time findings in this case, including those based upon 18 U.S.C. §§ 3161(h)(1)(D) and (h)(7)(A), the period of time from the date of this order through the conclusion of defendant's commission to

the custody of the Attorney General as referenced above is excluded pursuant to 18 U.S.C. § 3161(h)(1)(A).  A status conference is hereby scheduled before the undersigned on July 13, 2020 at 10:00 a.m.

IT IS SO ORDERED.

Dated:   **June 8, 2020**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE